JOHN L. BURRIS, Esq., (SBN 69888)
DeWITT M. LACY, Esq., (SBN 258789)
**THE LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Center
7677 Oakport St., Suite 1120
Telephone: (510)839-5200
Facsimile: (510)839-3882
john.burris@johnburrislaw.com
dewitt.lacy@johnburrislaw.com

Attorney(s) for Plaintiff

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

ERIC NICHOLS, an individual;
SARA FOLEY, an individual,

Plaintiffs,

vs.

CITY of VALLEJO, a municipal corporation; VALLEJO POLICE DEPARTMENT, a municipal corporation; JOSEPH KREINS individually and in his capacity as Chief of Police for the CITY OF VALLEJO; OFFICER fnu CLARK, individually and in his capacity as a police officer for the CITY OF VALLEJO; OFFICER fnu JOSEPH, individually and in his capacity as a police officer for the CITY OF VALLEJO, OFFICER fnu TAI, individually and in his capacity as a police officer for the CITY OF VALLEJO; OFFICER fnu GREENBERG individually and in his capacity as a police officer for the CITY OF VALLEJO; and DOES 1-10, inclusive; individually and in their capacities as OFFICERS for the CITY OF VALLEJO,

Defendant

Case No.: 2:12-cv-02564-KJM-AC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT**

Date: December 6, 2013
Time: 10:00 a.m.
Location: Courtroom 3, 15th Fl

Honorable Kimberly J. Mueller

**TABLE OF CONTENTS**

Table of Contents……………………………….……………………………………….. 2

Table of Authorities………………………………………………………….……….. 3

Introduction…………………………………………………………………………… 5

Statement of Facts…………………………….………………………………........ 5

B. Subject-Incident According to Defendants ……………………………………. 9

Argument………………………….…………………………………….………...... 10

A. Legal Standard for Summary Judgment.……………………….……………… 10

B. Plaintiffs Properly Assert Causes of Action Against all Defendants..…...…. 12

C. Plaintiff Foley Properly Alleges and Proves Causes of Action Against Defendant Clark………………………………………………………………... 15

1. Reasonableness of Defendant Clark's Use of Force …..………... 15

2. Qualified Immunity Analysis.……………………………..…... 17

Conclusion……………………….………………………………………………… 19

**TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........ 10, 17

*Ashcroft v. al-Kidd*, ––U.S. ––, 131 S.Ct. 2074 (2011) ........ 17

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) ........ 16

*Castaneda v. Department of Corrections & Rehabilitation*, 207 Cal.App.4th 1488 (2012) ........ 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........ 11

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ........ 11

*Franklin v. Foxworth*, 31 F.3d 873 (9th Cir.1994) ........ 16

*Graham v. Connor*, 490 U.S. 386 (1989) ........ 15, 16, 17

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ........ 17

*Hope v. Pelzer*, 536 U.S. 730 (2002) ........ 17

*Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) ........ 17

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099 (9th Cir. 2000) ... 11

*Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002) ........ 15

*Saucier v. Katz*, 533 U.S. 194 (2001) ........ 16

*Scott v. Harris*, 550 U.S. 372 (2007) ........ 15

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) ........ 16

*Smith v. County of Los Angeles*, 214 Cal.App.3d 266 (1989) ........ 13

*Stevenson v. San Francisco Housing Authority*, 24 Cal.App.4th 269 (1994) ........ 14

*Turner v. State of California*, 232 Cal.App.3d 883 (1991) ........ 14

*Wilkins v. City of Oakland*, 350 F.3d 949 (9th Cir. 2003) ........ 18

**Statutes**

Federal Rules of Civil Procedure, Rule 56(a) ........ 10

**California Statutes**

California Civil Code section 52.1 .......................................................................................... 14

**INTRODUCTION**

Plaintiffs Eric Nichols and Sara Foley oppose Defendants' Motion for Summary Judgment as to all of Plaintiff Foley's claims and Motion for Partial Summary Judgment as to Plaintiff Nichols' Fourth Amendment and state law causes of action. This Opposition to Defendants' Motion for Summary Judgment focuses on all issues raised by the Defendants stemming from the basis of the Defendants' interaction with Plaintiffs. Defendants argue that based on the undisputed facts Plaintiff Foley simply has no claim for violation of her civil rights or state common law rights, and that Plaintiff Nichols' fails to allege any wrongdoing by certain Defendant Officers. Defendants base their argument on a convenient misapprehension of the California Government Tort Claims Act and while erroneously attempting to ignore a significant portion of Plaintiffs' evidence that describes the incessant taunting and racial animus of the Defendant Officers.

In conjunction with this Memorandum, Plaintiffs have also filed the Declaration of DeWitt Lacy ("Lacy Declaration"), which includes excerpts of the Deposition testimony of the parties, Plaintiffs' Objections to Defendants' Separate Statement of Undisputed Facts, on the Court's file in this matter, and on any oral and/or documentary evidence presented at the hearing of this motion.

**STATEMENT OF FACTS**

On July 23, 2011 at approximately 2:00 a.m., Plaintiffs Eric Nichols and Sara Foley had been celebrating their friend's birthday and were attempting to attend a house party. (See Deposition testimony of Eric Nichols at 14:9-15:23, attached to the Lacy Declaration as Exhibit A, hereinafter cited as "Nichols Depo;" see also, Deposition Testimony of Sara Foley at 7:7-13, 9:19-21, attached to the Lacy Declaration as Exhibit B, hereinafter cited as "Foley Depo." ) At that time, Plaintiffs Nichols and Foley were in a romantic relationship, living together, and Plaintiff Foley was six months pregnant with their only child. (Nichols Depo 8:10-25, 16:13-16;

Foley Depo 7:17-21, 46:8-10.) They had come from a nightclub where Plaintiff Foley did not consume any alcoholic beverages and Plaintiff Nichols had two beers and a shot. (Nichols Depo 46:22-47:6; Foley Depo 10:23-25, 45:19-46:1.)

When Plaintiffs arrived at the house party, City of Vallejo police were taking people out of a car that was stopped right in front of the party. (Nichols Depo 16:23-17:6; Foley Depo 12:8-18.) Plaintiffs parked on a nearby cross street and walked to the corner of El Dorado Street and Main Street and watched the police arrest the suspects from the stopped vehicle. (Nichols Depo 17:9-14; Foley Depo 12:22-13:14.) It was just Plaintiffs and their friend Sascha Ogburn standing at the corner watching the police activity. (Nichols Depo 17:15-21, 18:15-24; Foley Depo 18:20-23.) There was a crowd of partygoers watching the police activity from inside and in front of the house, and there were some pedestrians on the street watching as well. (Nichols Depo 19:3-19:8.) Plaintiff Foley estimated that there were 30 partygoers watching from inside the house and an addition 20 people watching from the street. (Foley Depo 13:15-15:8, 33:23-25.) There was also a large police presence with officers from many different law enforcement agencies on scene. (Nichols Depo 18:24-19:2; see also, Deposition testimony of William Clark at 98:4-11, attached to the Lacy Depo as Exhibit C, hereinafter cited as "Clark Depo.") The officers were being very aggressive and forceful with the crowd of partygoers. (Foley Depo 13:15-14:9, 14:25-15:8.)

Plaintiffs observed Defendant Sergeant William Clark arrive on the scene, retrieve his riot gun from the truck of his patrol car, and walk back to the scene to assist the other officers. (Nichols Depo 17:22-18:14; Foley Depo 16:21-17:22.) Upon assessing the scene, Defendant Clark determined that the other officers had the car stop suspects under control and he focused on dispersing the crowd. (Clark Depo 66:16-67:8.) Defendant Clark walked variously between the party-house (321 El Dorado which was in the middle of the block) which had the highest concentration of party-going onlookers to the south corner where a crowd had formed pushing

back the partygoers back from either location. (Clark Depo 70:1-16, 72:1-25, 73:17-74:13) Defendant Clark then he walked to the northern corner of the street where Plaintiffs were located several houses away from the actual car stop and where a smaller group of onlookers had formed. (Clark Depo 73:17-74:13, 83:3-10.) Defendant Clark, while still clutching the riot gun, approached Plaintiffs shoved Plaintiff Foley in the chest and simultaneously said, "you all need to leave." (Nichols Depo 19:9-16; Foley Depo 17:23-18:14.) Defendant Clark did not say anything to Plaintiff Foley before shoving her in the chest and Plaintiff Foley had not said anything to the officer. (Foley Depo 18:17-19, 19:13-15.) Defendant Clark shoved Plaintiff Foley hard with his left-handed opened. (Foley Depo 19:16-20:9.) Plaintiff Nichols reached for Plaintiff Foley and Sascha Ogburn to turn them around so that they could leave and told Defendant Clark to stop harassing Plaintiff Foley because she was pregnant. Defendant Clark, who was standing approximately four feet from Plaintiffs, instantly shot Plaintiff Nichols to his mid-section with the riot gun. (Nichols Depo 20:1-6; Foley Depo 20:16-22:12.) Defendant Clark then turned his attention to the rest of the crowd which, in response to the loud boom of the riot gun, began to scatter. (Clark Depo 89:14-90:7.)

Plaintiff Nichols hunched over in pain with a ringing in his ears and retreated away down Main Street. (Nichols Depo 20:7-11, 21:5-20; Foley Depo 22:16-23:2.) Plaintiff heard an officer say "get that nigger." (Nichols Depo 20:12-21:4.) Officers Greenberg and Tai ran after Plaintiff Nichols. (See Deposition Testimony of Robert Greenberg at 101:24-103:4, attached to the Lacy Declaration as Exhibit D, hereinafter cited as "Greenberg Depo;" see also, Deposition Testimony of Jeff Tai at 71:2-19, attached to the Lacy Declaration as Exhibit E, hereinafter cited as "Tai Depo.") Plaintiff Nichols walked about 30 feet from the corner and laid on his stomach in the middle of the street with his arms spread out and his head lifted looking at the approaching officers. (Nichols Depo 21:23-22:11, Foley Depo 23:15-23, 24:3-14, 25:4-17.) Defendant Greenberg approached Plaintiff, stood over him, and instantly without warning tased Plaintiff

Nichols in dart-mode to his back. (Nichols Depo 23:1-11, 23:24-24:1, 28:20-31:16; Foley Depo 25:24-26:23; Greenberg Depo 105:8-106:10.) Defendant Greenberg ordered Plaintiff to stop moving as he cycled the taser; of course, Plaintiff was flailing involuntarily from the electric current running through his body. (Nichols Depo 24:2-14.) Plaintiff then felt someone grab his right arm and put it behind his back and a different officer grab his left arm. (Nichols Depo 23:12-17, 24:15-25:14; Tai Depo 74:25-75:12.) Defendant Tai placed his knee across Plaintiff's shoulders. (Tai Depo 77:7-11.) As he was being handcuffed, Plaintiff felt one of the officers (who he believed was either Defendants Joseph or Tai) strike his right elbow one to five times with what he believed to be a baton. (Nichols Depo 25:15-26:23; Foley Depo 31:1-15.) The officers then stood Plaintiff Nichols up. (Nichols Depo 32:1-20.)

As Defendants Greenberg and Tai tased and handled Plaintiff Nichols, Plaintiff Foley stood nearby watching in horror. (Foley Depo 23:24-24:2, 32:8-13.) Plaintiff Nichols was screaming as he was being tased, Defendant Tai told Plaintiff Nichols to "shut up" and pointed out to him "oh, is that your little white bitch over there crying?" (Foley Depo 23:3-13, 27:2-17, 30:7-9, 31:22-32:5, 39:2-40:4.) As the Defendant Officer tased and beat Plaintiff Nichols, he defecated and urinated on himself. (Nichols Depo 33:2-8.) As Defendant Joseph guided Plaintiff Nichols to his patrol car, he pulled Plaintiff's pointer finger on his right hand and bent it causing Plaintiff pain and internal damage that persists to this day. (Nichols Depo 32:21-33:1, 33:9-22; Foley Depo 29:16-30:17.) Defendants Joseph and Tai transported Plaintiff Nichols to the hospital. (Nichols Depo 35:7-11; see also, Deposition Testimony of Dustin Joseph at 42:11-43:18, attached to the Lacy Declaration as Exhibit F, hereinafter cited as "Joseph Depo.") During the ride to the hospital, Defendant Joseph asked Plaintiff whether he "crapped his pants" and ridiculed Plaintiff Nichols for defecating on himself. (Nichols Depo 38:12-16; Joseph Depo 46:17-47:11.) Indeed, Plaintiff Foley heard the officers ridiculing Plaintiff about "smelling like shit" at the scene. (Foley Depo 27:2-17.) The hospital staff removed the taser probes from

Plaintiff's back, x-rayed him, said everything was fine and cleared him to be booked into jail and released him back to the Defendant Officers. (Nichols Depo 36:15-20; Joseph Depo 47:23-48:7.) The Defendant Officers then took Plaintiff to jail to be booked. (Nichols Depo 38:1-11.) The Defendant Officer did not ever administer a field sobriety test, Breathalyser test on Plaintiff, or have his blood drawn to determine his blood alcohol content, if any. (Nichols Depo 39:4-15.) Upon being bailed out of jail the following day, and Plaintiff went to the hospital where he learned that his arm was broken and that his right index finger was sprained. (Nichols Depo 49:12-15.)

Plaintiff Foley had a prior dealing with Defendant Tai a few months prior to the subject-incident where he threatened to take her to jail because she, admittedly, was acting belligerent, and she believe that the Defendant Officer recognized her during the subject-incident based on this prior encounter. (Foley Depo 38:1-39:1.) Plaintiff testified that Defendant Tai called her a "white bitch" repeatedly and that she had never experienced racism in this impertinent manner ever before. (Foley Depo 22:16-23:13, 27:2-17, 31:22-32:5, 36:13-37:11, 39:2-40:4.)

***Subject-Incident According to Defendants***

Defendant Clark testified that Plaintiffs were amongst a crowd of about 20 to 35 people on the northwest corner of El Dorado and Main Streets, and that Plaintiff Nichols was screaming and cussing and trying to instigate that crowd. (Clark Depo 82:7-84:7.) Defendant Clark contacted Plaintiff, had a conversation where the officer informed Plaintiff that he could not go to the party but that he could watch the police activity and protest as loudly as he wanted if he simply crossed the street. (Clark Depo 71:7-23, 82:7-25, 85:1-8) In response, Plaintiff Nichols clenched his fists, took a fighting stance, and advanced on the officer, who was still brandishing the riot gun, in an attempt to intimidate the officer. Defendant Clark pushed Plaintiff Nichols back twice and each time Plaintiff continued to advance on the officer so, Defendant Clark pushed Plaintiff back so that he was 7 to 8 feet away and fired the riot gun to Plaintiff's stomach.

(Clark Depo 85:9-23; Greenberg Depo 96:11-98:10.) Defendant Clark did not push Plaintiff Foley. (Id.; Greenberg Depo 92:17-22.)

As Defendant Greenberg chased Plaintiff Nichols down Main Street, he repeatedly yelled for Plaintiff to stop and get on the ground. (Greenberg Depo 104:7-22.) Defendant Greenberg testified that as he approached Plaintiff he tucked his arms underneath him and reached inside his waistband, so he immediately tased Plaintiff Nichols without warning. (Greenberg Depo 104:23-106:13.) During the taser cycle, Defendant Greenberg told Plaintiff to put his arms behind his back and Plaintiff complied, Defendant Greenberg got Plaintiff's left arm in cuffs but Plaintiff pushed up with right arm, so Defendant Greenberg struck Plaintiff's arm with his flashlight, Plaintiff continued to push himself up, so Greenberg cycled the Taser again until Plaintiff complied. (Greenberg Depo 108:4-110:7.)

None of the Defendant Officers uttered any racist or sexist epithets and either Plaintiff. (Clark Depo 93:3-19; Tai Depo 88:10-19.) Defendant Joseph testified that he only asked Plaintiff Nichols whether he had "crapped his pants" because the patrol car smelled, but that neither he nor Defendant Tai ridiculed Plaintiff. (Joseph Depo 46:17-47:11; Tai Depo 81:12-82:3.)

## ARGUMENT

### A. LEGAL STANDARD ON SUMMARY JUDGMENT

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, at 248-49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to

interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000); see *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex Corp*., 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co., Ltd*., 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See *Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. See *Celotex*, 477 U.S. at 323.

Here, Defendants deceptively claim to be crediting Plaintiffs' version of the facts. While the Defendant Officers claim that the crowd of on-lookers was enormous, confrontational and virtually snarling, Plaintiffs describes a moderate sized crowd. Importantly, Plaintiffs were a great distance away from the traffic stop and standing in the vicinity of a much smaller group of people that were not associated with. The other factual disputes are not much less nuanced: Plaintiffs claim that Defendant Clark shoved Plaintiff Foley and the Defendant Officers denied that this ever occurred instead, Defendant Clark only pushed Plaintiff Nichols; Defendant Tai and other officers yelled racist and sexist epithets at both Plaintiffs, whereas the Defendants claim no such remarks were ever uttered, Plaintiffs claim that the Defendant Officers ridiculed

Plaintiff Nichols for defecating on himself, whereas the Defendant Officers claimed only to have inquired to determine where the smell was coming from.

Contrary to Defendants' representation, the parties' accounts of what actually transpired are very different, requiring a jury to determine questions of fact as to what actually transpired and whether qualified immunity is available. As such, summary judgment is not appropriate here.

**B. PLAINTIFFS PROPERLY ASSERT CAUSES OF ACTION AGAINST ALL DEFENDANTS**

Defendants attempt to truncate the universe of evidence and consideration of Plaintiffs' causes of action by implying that Plaintiffs are limited from asserting new state law claims that were not contained in their tort claims.[1]

Specifically as to Plaintiff Foley, Defendants argue that her sole claim is against Defendant Clark for shoving her in the chest, and not the other Defendant Officers for any of their conduct, so summary judgment should be granted as to those remaining three Defendants. As to Plaintiff Nichols, Defendants claim that the only conduct he raised in his tort claim was the improper use of the 37mm foam baton and the taser, and the strikes with baton as against Defendants Clark and Greenberg and that the tort claim does not attribute any actionable conduct against Defendants Joseph and Tai. Defendants then make the fantastic leap that this supposed failure of the tort claim precludes not only Plaintiff Nichols' state law claims against Defendants Joseph and Tai but render ALL of his causes of action, including his federal claims against these defendants, subject to summary judgment. In so arguing, Defendants misapprehend the

[1] In addition, Defendants quip that the Complaint indiscriminately allege causes of action against the Defendant Officers "without differentiation." Plaintiffs submit that the difficulty in differentiating causes of action as to which Defendants was virtually impossible prior to taking Defendants' depositions, because Defendants never turned over any of the documents that they promised in their Initial Disclosures (indeed they still have not turned over their Initial Disclosures to this day), and Defendants refused Plaintiffs' attempts to propound written discovery claiming that the deadline for fact discovery was imminent. See Lacy Declaration at ¶2, see also Defendants Initial Disclosures, attached to the Lacy Declaration as Exhibit G.

Government Tort Claims Act. Defendants essentially attempt to excise any allegations of racist and sexist conduct from the complaint.

Under the Tort Claims Act, before any civil complaint for money or damages may be filed, "'[e]ach theory of recovery against the public entity must have been reflected in a timely claim. In addition, the factual circumstances set forth in the claim must correspond with the facts alleged in the complaint. [Citation.]' [Citation.] The aim of the tort claim statutes is to provide sufficient information to enable the public entity to investigate claims and settle, if appropriate, without the expense of litigation, and to take the potential claim into account in fiscal planning." *Castaneda v. Department of Corrections & Rehabilitation*, 207 Cal.App.4th 1488, 1495-1496 (2012); see *Smith v. County of Los Angeles*, 214 Cal.App.3d 266, 280 (1989) ["'So long as the policies of the claims statutes are effectuated, [the claim] should be given a liberal construction to permit full adjudication on the merits.'"].)

"'[A] claim need not contain the detail and specificity required of a pleading, but need only "fairly describe what [the] entity is alleged to have done." [Citations.] As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions [citation], the claims statute "should not be applied to snare the unwary where its purpose has been satisfied" [citation].' [Citation.]" (*Castaneda, supra*, 207 Cal.App.4th at 1497 (citations omitted.)

In their tort claims, Plaintiffs provide Defendant City ample notice of the circumstances of the subject-incident and the basic allegations of the involved officer's use of unreasonable and unlawful force. Moreover, Plaintiffs even provide notice of all anticipated causes of action including claims based on racial discrimination and giving rise to both Plaintiffs suffering emotional distress from all Defendants intentional and unintentional conduct.

Defendants' citation to *Turner v. State of California,* 232 Cal.App.3d 883 (1991), is inapposite. In *Turner*, the tort claim alleged a failure to warn of or take adequate precautions

against anticipated gang violence and reckless conduct of security officers in firing a shot which hit the plaintiff; the complaint then included an allegation of inadequate lighting. *Id*. at pp. 888–889. The court concluded that the allegations regarding a dangerous condition caused by inadequate lighting were based on a different set of facts that were not stated in the tort claim. *Id*. This is not a case in which the complaint alleges material factual variances from the basis of the tort claim. As has been noted in decisions distinguishing *Turner*, "[i]n other cases, courts have found that apparent differences between the complaint and the claim were merely the result of a plaintiff's addition of factual details or additional causes of action. This type of variance is not fatal where the basic facts are set out in the claim." *Stevenson v. San Francisco Housing Authority*, 24 Cal.App.4th 269, 277 (1994). Similarly here, the basic facts and recitation of the claims are all a result of the Defendant Officers violating Plaintiffs Constitutional civil liberties and state law rights by committing various torts against them.

To this end, Plaintiff Foley properly alleges claims for Intentional Infliction of Emotional Distress, Negligence, and California Civil Code section 52.1 against Defendant Tai for intimidating her from exercising her right to peaceably assemble and by hurling racial and sexist epithets at her, particularly given her previous encounter with Defendant Tai a few months prior to the subject-incident.[2] Similarly, Plaintiff Nichols properly alleges claims against Defendant Tai for using excessive force in holding him down as he was being tased and placing his knee on Plaintiff's back and shoulder area as he handcuffed Plaintiff, particularly since Plaintiff was not resisting the officers. Moreover, Defendants Joseph and Tai ridiculed Plaintiff Nichols for defecating on himself, and Defendant Tai hurled racial epithets at Plaintiff calling him a nigger and saying that he, as a nigger, got a white bitch pregnant, speaking of Plaintiff Foley. Therefore, Plaintiff Nichols properly alleges causes of action for Intentional Infliction of Emotional Distress, Negligence, and California Civil Code section 52.1 against Defendants Joseph and Tai.

[2] Plaintiffs acknowledge that Defendants Greenberg and Joseph did not have direct contact with Plaintiff Foley and thereby withdraws any claims against these Defendants as to Plaintiff Foley.

As such, Defendants attempt to dispose of Plaintiffs' properly pleaded causes of action must fail.

**C. PLAINTIFF FOLEY PROPERLY ALLEGES AND PROVES CAUSES OF ACTION AGAINST DEFENDANT CLARK**

Defendants claim that Plaintiff Foley fails to show that Defendant Clark violated her constitutionally protected rights and that he is entitled to qualified immunity in any event. Again, Defendants are mistaken.

***Reasonableness of Defendant Clark's Use of Force against Plaintiff Foley***

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court instructed that "[d]etermining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). More recently, the Court has emphasized that there are no per se rules in the Fourth Amendment excessive force context; rather, courts "must still slosh [their] way through the factbound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007). "Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom ... summary judgment or judgment as a matter of law ... should be granted sparingly" in cases involving claims of excessive force. *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (citation omitted). Here, there is a factual dispute whether the alleged wrong doing even occurred, because Plaintiffs testified that Defendant Clark pushed the obviously pregnant Plaintiff Foley very hard in the chest, without giving a prior warning or even a command to disobey. Plaintiffs claim that Defendant Clark approached, pushed Plaintiff Foley and then gave the command to disperse. Of course, Defendants testified that Defendant Clark gave Plaintiff Nichols multiple warning to retreat across the street and that Defendant Clark pushed Plaintiff Nichols in order to defend

against the Plaintiff's advances but that Defendant Clark had no contact whatsoever with Plaintiff Foley.

"Pushes and shoves, like other police conduct, must be judged under the Fourth Amendment standard of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 209 (2001). The reasonableness-of-the-use-of-force inquiry is guided by the three *Graham* factors: 1) the quantum of force used to effectuate the arrest; 2) whether the suspect posed a threat to the safety of the officers or others; 3) the severity of the crime at issue; however, the Ninth Circuit has explained that, "[t]hese factors, [] are not exclusive. Rather, we examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir.1994)). Other such factors may include: whether the individual resisted arrest or attempted to flee; and the availability of alternative methods of capturing or subduing the suspect. *Smith v. City of Hemet*, 394 F.3d 689, 702-03 (9th Cir. 2005) (en banc)). In all circumstances, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted).

Viewing the facts in the light favorable to Plaintiffs, they were not committing any crime or wrongdoing or posing any threat to the officers conducting the car stop by standing well away, indeed a half block away from, the police activity. Defendant Clark testified that the crowd forming to the south of the car stop encroached the scene to within 55 and 70 feet, but that he walked all the way to the intersection of El Dorado and Main in order to contact the Plaintiffs. Moreover, Defendant Clark approached Plaintiff Foley and shoved her before giving any command to disperse. Given that there was no crime and the governmental interest in keeping Plaintiffs a safe distance from the car stop was nil because the Plaintiffs were not near the car stop nor attempting to encroach the scene, Defendant Clark's use of any force, even if the Court

deems a hard shove of an obviously pregnant woman to be minimal force, was unreasonable and excessive under these circumstances.

***Qualified Immunity Analysis***

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, ––U.S. –––, 131 S.Ct. 2074, 2080, (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Under the second prong, a "Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id*. at 2083 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

The Supreme Court has also held that, "in an obvious case, [the *Graham* standards for excessive force] can clearly establish the answer, even without a body of relevant case law" and that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 738, 741 (2002). The Ninth Circuit is "particularly mindful of this principle in the context of Fourth Amendment cases, where the constitutional standard—reasonableness—is always a very fact-specific inquiry." *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011). "If qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." *Id*. Significant here, "[w]here the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate." *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003).

As discussed above, questions of material fact prevent determination of the qualified immunity at this stage of the litigation. Primarily, whether Defendant Clark shoved Plaintiff Foley at all, and whether Plaintiff Nichols was screaming and acting as the primary instigator of the crowd located to the north of the car stop activity warranting Defendant Clark to endeavor to disperse this section of onlookers, and whether, Defendant Clark gave Plaintiffs several warnings to disperse which he openly defied. Moreover, a finder of fact may well determine that Defendant Clark's testimony explaining his purported interest in securing the scene by pushing the crowd merely across the street where it would have been safer for everyone and they would have been free to continue their boisterous protest was disingenuous and a pretext.

As such, Defendant Clark is not entitled to qualified immunity.

**CONCLUSION**

Based on the relevant facts and case law cited above, this Court should deny Defendants' Motion for Summary Judgment of Plaintiff Foley's claims and Partial Summary Judgment as to Plaintiff Nichols' claims because material questions of fact exist thereby preventing granting the motion in their favor.

Dated: November 22, 2013

**THE LAW OFFICES OF JOHN L. BURRIS**

/s/ *DeWitt M. Lacy*
DeWitt M. Lacy
Attorneys for Plaintiffs
ERIC NICHOLS and SARA FOLEY