UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ERIC NICHOLS, SARA FOLEY,

Plaintiffs,

v.

CITY OF VALLEJO, et al.,

Defendants.

No. 2:12-cv-02564-KJM-AC

ORDER

This matter is before the court on the motion for summary judgment filed by defendants City of Vallejo, Kreins, Clark, Joseph, Tai and Greenberg as to plaintiff Sara Foley, and the motion for partial summary judgment as to plaintiff Eric Nichols. (ECF 16.) The court held a hearing on December 6, 2013, at which Dewitt Lacy appeared for plaintiffs and Kelly Trujillo appeared for defendants. For the following reasons, defendants' motion for summary judgment is GRANTED in part and DENIED in part.

I.     ALLEGED FACTS AND PROCEDURAL BACKGROUND

At or about 1:30 a.m. on July 23, 2011, Vallejo Police Officers encountered six cars driving recklessly on City streets and began pursuing one of these cars in a low speed chase. (Pls.' Response to Defs.' Separate Statement of Facts ¶¶ 3, 5, ECF 18.) The chase concluded at 321 El Dorado Street in Vallejo, where a large house party was taking place. (*Id.* ¶ 8.) The people in the stopped vehicle were associated with the house party. (*Id.* ¶ 6.) A crowd began to

1

1 gather to observe the traffic stop: some 30 people in and around the house, and another 20 people
2 at other locations outside.  (*Id.* ¶ 25(c)–(d).)  Some of the crowd yelled profanities at the officers.
3 (*Id.* ¶¶ 7–8.)  Defendant Clark, who was the on-duty patrol sergeant charged with crowd control
4 and the safety of his officers, began telling the crowd to disperse and to give the officers space.
5 (*Id.* ¶¶ 4, 9, 11.)  Clark considered the stop high risk: his patrol squad of nine officers had taken
6 95 guns off the streets from traffic stops in Vallejo in 2011 alone.  (*Id.* ¶ 10.)  Some of the
7 onlookers complied with Clark's instructions to disperse, but others did not; some would leave
8 the area only to return when Clark moved away.  (*Id.* ¶ 11.)

9 At approximately 2 a.m., plaintiffs arrived at the scene of the traffic stop to attend
10 the house party.  (*Id.* ¶ 25(a).)  Plaintiff Foley and her boyfriend plaintiff Nichols parked Foley's
11 car on "Maine Street" and began walking toward the party.  (*Id.* ¶ 25(b).)  Foley was six months
12 pregnant. (Dep. of Sara Foley at 46, Ex. B, Decl. of Dewitt Lacy, ECF 19-2.)  As plaintiffs drew
13 nearer to the party, Foley heard the police ordering the onlookers to disperse.  (ECF 18 ¶ 25(e).)
14 When Foley and Nichols were within 150 feet, or several houses away, from the party (Dep. of
15 Sergeant William Clark at 74, Ex. C, Decl. of Dewitt Lacy, ECF 19-3; Pls.' Opp'n at 7, ECF 17),
16 defendant Clark approached them carrying a bean bag gun (ECF 18 ¶ 25(f)).  Clark pushed Foley
17 once in the chest with his open left hand, simultaneously telling Foley to move away from the
18 area.  (*Id.* ¶ 24.)  The shove did not cause Foley to fall to the ground or to seek medical attention.
19 (*Id.*)

20 At some point soon thereafter, defendants shot plaintiff Nichols with a 37mm foam
21 baton gun or a similar non-lethal crowd control weapon, tasered him, and struck his right elbow
22 with some object while taking him into custody.  (*See id.* ¶ 23; Dep. of Eric Charzell Nichols at
23 24–26, Ex. A, Decl. of Dewitt Lacy, ECF 19-1 (Nichols Dep.); Defs.' Mot. for Summ. J. at 9,
24 ECF 16-1; ECF 17 at 8–10.)  Because the details of plaintiff Nichols's arrest are disputed and are
25 not relevant to the court's resolution of the pending motion, the court does not resolve the dispute
26 or rely on disputed facts here.

27 Based upon the foregoing incident, plaintiffs brought a California Tort Claims Act
28 claim against defendants on January 3, 2012.  (Decl. of Erika Anderson, Ex. A, ECF 16-4.)  In

their claim, plaintiffs' description of the incident was substantially similar to that set forth above. (*See id.*; ECF 18 ¶ 27.)

Plaintiffs filed their complaint in the instant case on October 12, 2012, naming as defendants the City of Vallejo, the Vallejo Police Department, Chief of Police Joseph Kreins, and individual Vallejo Police Department officers Clark, Joseph, Tai, and Greenberg. (ECF 1.) Plaintiffs brought nine claims: (1) excessive force under 42 U.S.C. § 1983 against defendant police officers; (2) *Monell* liability against all defendants; (3) assault and battery against defendant police officers; (4) false arrest and imprisonment against defendant police officers; (5) intentional infliction of emotional distress against defendant police officers; (6) violation of California Civil Code § 52.1 against defendant police officers; (7) negligence against defendant police officers; (8) negligent hiring, retention, training, supervision, and discipline against all defendants; and (9) vicarious liability against defendant Vallejo Police Department. (*Id.*)

The parties filed a stipulation on November 1, 2013, dismissing all claims with prejudice against defendants City of Vallejo, Vallejo Police Department, and Chief of Police Kreins. (ECF 15.) The parties also stipulated to dismissal with prejudice as to all defendants of plaintiffs' second claim for *Monell* liability; eighth claim for negligent hiring, retention, training, supervision, and discipline; and ninth claim for vicarious liability. (*Id.*) Additionally, the parties agreed to the dismissal with prejudice of plaintiffs' assault and battery claim against defendant Joseph in their third cause of action and plaintiff Foley's claims against defendants Joseph, Tai, and Greenberg for excessive force in her first cause of action and for false arrest and imprisonment in her fourth cause of action. (*Id.*)

Defendants filed the instant motion on November 5, 2013 (ECF 16), plaintiffs opposed on November 22, 2013 (ECF 17), and defendants replied on December 2, 2013 (ECF 20).

II.     STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the

---

[1] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

4

burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86 (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

III. ANALYSIS

Defendants assert that all of plaintiff Foley's remaining claims against each of the remaining defendants are not actionable as a matter of law. Additionally, defendants contend plaintiff Nichols's remaining claims against defendants Joseph and Tai are not actionable as a matter of law.

A. Plaintiff Foley's Claims

Plaintiff Foley's three surviving claims against defendants Clark, Greenberg, Joseph, and Tai are: (5) intentional infliction of emotional distress; (6) violation of California Civil Code § 52.1; and (7) negligence. She brings an additional three causes of action against defendant Clark only: (1) excessive force; (3) assault and battery; and (4) false arrest and imprisonment. Defendants seek judgment on each of these claims in favor of all remaining defendants.

1. Claims Against Defendants Greenberg, Joseph and Tai

Defendants move for judgment on plaintiff Foley's three remaining claims: intentional infliction of emotional distress, violation of California Civil Code § 52.1, and negligence. Defendants contend plaintiff Foley may not maintain these three claims against defendants Greenberg, Joseph and Tai because she conceded under oath that none of these defendants physically touched her or caused her any injuries. (ECF 16-1 at 11.) Moreover, defendants argue, Foley's claims are barred because she did not assert them in her Government Tort Claim. (*Id.* citing *Turner v. State of Cal.*, 232 Cal. App. 3d 883, 890–91 (1991).)

5

While plaintiffs counter defendants' reliance on *Turner* is misplaced, and plaintiff Foley's claims are not barred, they concede defendants Greenberg and Joseph did not have any direct contact with plaintiff Foley and therefore withdraw plaintiff Foley's claims against them. (ECF 17 at 13, 14 n.2.) Plaintiffs argue, however, that plaintiff Foley's claims against defendant Tai are viable because there is a genuine issue of material fact about whether Tai hurled racial and sexist epithets at plaintiff. (*Id.* at 14.) Accordingly, the court considers in this subsection defendants' arguments relating to defendant Tai only.

The California Tort Claims Act (CTCA) "provides that presentation of a [written] claim for money or damages against a local public entity, and action thereon by the entity, are prerequisites to filing a civil lawsuit for damages." *Dean v. Sausalito-Marin City Sanitary Dist.*, 95 F.3d 1157, at *2 (9th Cir. 1996) (citing CAL. GOV. CODE § 945.4). The written claim must include "'[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.'" *Id.* (quoting CAL. GOV. CODE § 910(d)). The primary function of the CTCA "'is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate [sic], avoid litigation by settling meritorious claims.'" *Turner*, 232 Cal. App. 3d at 889 (quoting *Elias v. San Bernardino Cnty. Flood Control Dist.*, 68 Cal. App. 3d 70, 74 (1977)). The CTCA claim consequently must "describe fairly" what the entity is alleged to have done. *Id.*

A plaintiff may not bring suit on allegations that are "completely different" from those alleged in her CTCA claim. *Id.* at 890; *accord Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988). In *Turner*, the court of appeal upheld the trial court's refusal at summary judgment to consider evidence relating to inadequate lighting. *Id.* at 890–91. In his CTCA claim, the plaintiff alleged generally that the defendant Cal Expo was liable for plaintiff's being shot in one of Cal Expo's parking lots in part because of the "dangerous conditions of property." *Id.* In his suit the plaintiff alleged the defendant was liable because the parking lot was inadequately lit. *Id.* at 890. The court affirmed the trial court's finding that the plaintiff's general CTCA allegations concerning "dangerous conditions of property" were not broad enough to encompass those in the complaint: "Read in its entirety, the dangerous condition alleged in the

1  [CTCA] claim is known criminal activity, not inadequate lighting." *Id.* at 890–91.  In other

2  words, the allegations the plaintiff sought to introduce in his state court complaint were

3  "completely different from those contained in the [CTCA] claim." *Id.* at 890.

4        On the record before it, this court finds plaintiff Foley's three claims against

5  defendant Tai are not completely barred by the California Tort Claims Act.  Defendants contend

6  plaintiff alleged in her CTCA claim that only defendant Clark made "improper contact";

7  therefore, plaintiff must be barred from naming defendant Tai in this action.  (ECF 16-1 at 11.)

8  However, plaintiff's CTCA claim alleges that Tai was "being aggressive with the crowd" and that

9  Tai "began to beat Mr. Nichols in his arm with [Tai's] baton."  (Decl. of Erika Anderson, Ex. A at

10  2.)  Inasmuch as plaintiff Foley's three claims against defendant Tai are premised upon these

11  facts they are not barred.

12        However, plaintiffs' further arguments premising plaintiff Foley's claims on Tai's

13  use of racial and sexual slurs fall short.  In their opposition, plaintiffs argue that Foley's claims

14  against Tai are supported by plaintiff's allegations that Tai "intimidate[ed] plaintiff "from

15  exercising her right to peaceably assemble and by hurling racial and sexist epithets at her . . . ."

16  (ECF 17 at 14.)  Neither plaintiffs' complaint nor plaintiff Foley's CTCA claim mention any

17  defendant, let alone Tai, uttering racial and sexist epithets.  As with the "inadequate lighting"

18  allegations in *Turner*, *see* 232 Cal. App. 3d at 890, plaintiff's allegations of verbal abuse here are

19  "completely different" from those contained in plaintiff's CTCA claim, in which she alleged

20  physical improprieties and "aggressive[ness] with the crowd" only.  Plaintiff Foley is barred from

21  basing her three claims against Tai on allegations of verbal abuse against her or others.

22        Defendants next argue that plaintiff Foley's claims cannot lie against defendant

23  Tai because she "made clear under oath that the only force she is claiming relates to her

24  interaction with defendant Clark."  (ECF 16-1 at 11.)  While plaintiff Foley does appear to allege

25  that only defendant Clark physically touched her, she stated in her CTCA claim, and alleges in

26  her complaint here, that defendant Tai was aggressive with the crowd and beat Nichols's arm

27  with his baton.  (Anderson Decl., Ex. A at 2; Compl. ¶¶ 19, 25.)  These allegations are sufficient

28  /////


1  to sustain plaintiff's claims for negligence, intentional infliction of emotional distress, and
2  violation of California Civil Code § 52.1.

         2.       Claims Against Defendant Clark

4  Defendants argue summary judgment for defendants on plaintiff Foley's six causes
5  of action against defendant Clark is warranted because plaintiff's excessive force claim is not
6  viable. (ECF 16-1 at 12.) Defendants posit that each of plaintiff Foley's other five claims—false
7  arrest, assault and battery, negligence, intentional infliction of emotional distress, and violation of
8  California Civil Code § 52.1—depends upon her excessive force claim, in that if this first domino
9  falls, the others fall thereafter. (*Id.*)

         a.       Excessive Force

11  Defendants assert plaintiff cannot make out an excessive force claim under the
12  Fourth Amendment. (*Id.*) Even if plaintiff could establish a claim, defendants maintain
13  defendant Clark is entitled to qualified immunity. (*Id.*)

14  "Qualified immunity shields public officials from civil damages for performance
15  of discretionary functions. It is 'an immunity from suit rather than a mere defense to
16  liability . . . .'" *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Mitchell v. Forsyth*,
17  472 U.S. 511, 526 (1985)). Law enforcement officers are shielded from suit unless their conduct
18  violates "clearly established statutory or constitutional rights of which a reasonable person would
19  have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity test is
20  twofold. Under the first prong, the court considers whether the alleged facts, taken in the light
21  most favorable to plaintiff, show that defendants' conduct violated a constitutional right. *Saucier*
22  *v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*,
23  555 U.S. 223, 235 (2009). Under the second prong, the court must determine whether that
24  constitutional right was "clearly established." *Id.* Courts have discretion to address the prongs in
25  any order in light of the circumstances of each case. *Pearson*, 555 U.S. at 236. Additionally, in
26  the excessive force context, an officer is entitled to immunity if she has a "mistaken
27  understanding as to whether a particular amount of force is legal" in the particular circumstances
28  confronting her. *Id.* at 205.

To decide whether qualified immunity applies, the court here will consider (1) whether there was a violation of a constitutional right; (2) whether it was clearly established; and (3) whether the officer's potential mistake regarding the amount of force necessary was reasonable under the circumstances.

### i. Violation of constitutional right

A claim of excessive force in violation of the Fourth Amendment is analyzed under an objective reasonableness standard. *Scott v. Harris*, 550 U.S. 372, 381 (2007). The "reasonableness" inquiry in an excessive force case measures whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting her, without regard to the officer's underlying intent or motivation. *Graham*, 490 U.S. at 396–97. To determine if a Fourth Amendment violation has occurred, the extent of the intrusion on the individual's Fourth Amendment rights must be balanced against the government's interests to determine whether the officer's conduct was objectively reasonable based on the totality of the circumstances. *Miller v. Clark County*, 340 F.3d 959, 964, 968 (9th Cir. 2003).

The analysis involves three steps. First, the severity of the intrusion on the individual's Fourth Amendment rights is assessed by evaluating the type and amount of force inflicted. *Id.* at 964. Second, the government's interests are evaluated by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officer's or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape. *Id.* Third, the gravity of the intrusion on the individual is balanced against the government's need for that intrusion. *Id.* Ultimately, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

A rational trier of fact could find defendant Clark used excessive force against plaintiff Foley. It is true that Clark used a minimal amount of force: he "shov[ed] her in the middle of her chest with an open right palm" while telling her to back up. (ECF 18 ¶¶ 25(g)–(h).) It is undisputed this shove did not cause plaintiff to fall to the ground or to seek medical attention,

1  (*id.* ¶ 24); plaintiff contends, however, that the push was "hard, causing her to grab her chest, and
2  that she experience[d] emotional distress from the experience losing all trust in the police" (*id.*).
3          The government's interest in using force on plaintiff was insubstantial. Plaintiff
4  had at worst disobeyed an order to disperse, (*id.* ¶ 25(e)), she posed little threat to officers' or the
5  public's safety, (*id.* ¶¶ 25(a)–(h)), and she was not resisting arrest or attempting to flee police.
6  *Graham*, 490 U.S. at 396–97; *see also Nelson v. City of Davis*, 685 F.3d 867, 880 (9th Cir. 2012)
7  ("The fact that Nelson and his friends did not commit any chargeable offense, or, at most, a
8  misdemeanor, weighs heavily against the defendants' use of force.").
9          Balancing defendants' use of force against their need for it, a trier of fact could
10 find Clark's minimal use of force was unreasonable. *See Nelson*, 685 F.3d at 878 ("[W]hen the
11 governmental interest is insubstantial, the application of even minimal force may be
12 unreasonable."). When plaintiff was pushed by defendant Clark, she was approximately 150 feet,
13 or several houses away, from the ongoing traffic stop. (Dep. of Def. Clark, Ex. C at 74; ECF 17
14 at 7.) While some in the crowd of approximately 50 onlookers were yelling profanities at the
15 officers, who numbered more than nine, there is no indication plaintiff was shouting or otherwise
16 acting unruly. (ECF 18 ¶¶ 7–8.) Defendants do not argue, nor does the record support, that they
17 faced exigent circumstances justifying the use of even minimal force against nonthreatening
18 onlookers standing over 150 feet from a traffic stop. *See Nelson*, 685 F.3d at 880 ("Although the
19 officers plainly had an interest in clearing the apartment complex after permission to do so was
20 obtained from the property owner, the desire to do so quickly, in the absence of any actual
21 exigency, cannot legitimize the application of force when it is not otherwise justified.").
22 Furthermore, while the record implies plaintiff heard the officers' instructions to the immediate
23 crowd to leave or to give the officers room, (ECF 18 ¶¶ 11), there is no indication in the record
24 that Clark told plaintiff specifically to leave the scene before pushing her or that someone
25 standing 150 feet away would understand the officers' instructions applied to them.[2] *See*
26 *Deorle v. Rutherford*, 272 F.3d 1272, 1282 (9th Cir. 2001) (finding use of force unreasonable in

---

[2] In plaintiff's version of events, the police called the onlookers "nosey mother fuckers" while ordering them to disperse. (Dep. of Sara Foley at 15, Ex. B, Decl. of Dewitt Lacy, ECF 19-2.)

1 part because no prior warning was given to the plaintiff, who could not be "expected to comply
2 with instructions that were never given him").

3 Moreover, plaintiff was six months pregnant at the time of the incident. *See*
4 *Mattos v. Agarano*, 661 F.3d 433, 445 (9th Cir. 2011) (en banc) (finding the officers' knowledge
5 of the plaintiff's pregnancy before applying a localized taser to her leg and neck an
6 "overwhelmingly salient factor"). While the record is silent on whether Clark knew plaintiff was
7 pregnant when he pushed her, this court must on a motion for summary judgment draw all
8 inferences in plaintiff's favor. *Matsushita*, 475 U.S. at 587–88.

9 For the purposes of qualified immunity analysis at this stage of the litigation, the
10 court finds plaintiff's constitutional rights were violated.

11 ii.     Clearly established

12 The court next considers whether the violated constitutional right was clearly
13 established. The immunity inquiry focuses on whether the "right was clearly established at the
14 time of the violative conduct." *Nelson*, 685 F.3d at 883. Determining whether a right was clearly
15 established is a context-specific inquiry not amenable to "'broad general proposition[s].'" *Id.*
16 (quoting *Saucier*, 533 U.S. at 201). At the same time, to demonstrate a right is clearly established
17 it is not necessary that a defendant's specific behavior had been previously declared
18 unconstitutional; instead, it is enough that "the unlawfulness was apparent in light of preexisting
19 law.'" *Id.* at 885 (quoting *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998)).

20 Defendants are correct that Clark is entitled to qualified immunity because the law
21 that such minimal use of force in a crowd control situation could be unreasonable was not clearly
22 established by the time of the July 20 incident here. (ECF 16-1 at 17.) The *Nelson* case discussed
23 above had not yet been decided. The case of *Headwaters Forest Defense v. County of Humboldt*,
24 276 F.3d 1125, 1130 (9th Cir. 2002), had determined that officers could not use pepper spray on
25 nonthreatening, passively-resisting crowds, but had not clarified that even minimal force in such
26 situations could be unreasonable. *Cf. Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir.
27 2001) (safety interest in controlling large group in "evolving" situation justified use of pepper
28 spray).

Additionally, a Ninth Circuit panel had held in *Brooks v. City of Seattle*, 599 F.3d 1018, 1031 (9th Cir. 2011), that police officers did not use excessive force when they tasered a woman who was seven months pregnant for refusing to sign a traffic citation. That decision was reversed by *Mattos*, 661 F.3d at 452, in October 2011, several months after defendant Clark's use of force here. Further, the officers in cases involving the absence of a warning before force was used, including *Deorle*, 272 F.3d at 1282, provided the plaintiff no warning whatsoever before using substantial force. Here, plaintiff heard the officers instruct the crowd generally to disperse before force was used. Therefore, the unlawfulness of Clark's actions was not apparent at the time of the incident. *See Nelson*, 685 F.3d at 883.

Because plaintiff Foley's constitutional right at issue here was not clearly established, defendant Clark is entitled to qualified immunity.

      b.    Other Claims

Defendants contend that because plaintiff Foley cannot establish defendant Clark used unreasonable force against her, plaintiff's remaining five claims against Clark are not actionable. (ECF 16-1 at 12.) Because the court has found above that a reasonable trier of fact could find Clark used unreasonable force against plaintiff, the court denies summary judgment as to Foley's other five claims against Clark.

    B.    Plaintiff Nichols's Claims

Plaintiff Nichols's remaining six causes of action are: (1) excessive force under 42 U.S.C. § 1983 against Clark, Tai, and Greenberg;[3] (3) assault and battery against Clark, Tai, and Greenberg; (4) false arrest and imprisonment against Clark, Tai, Greenberg, and Joseph; (5) intentional infliction of emotional distress against Clark, Tai, Greenberg, and Joseph; (6) violation of California Civil Code § 52.1 against Clark, Tai, Greenberg, and Joseph; (7) negligence against Clark, Tai, Greenberg, and Joseph.

Defendants argue plaintiff Nichols's claims against officers Joseph and Tai are not actionable as a matter of law because the undisputed facts show defendants Clark and Greenberg

---

[3] At hearing, plaintiffs' counsel clarified that plaintiff Nichols is not bringing an excessive force claim against defendant Joseph.

12

were the only ones who had physical contact with Nichols.  (ECF 16-1 at 17.)  Defendants concede a factual dispute remains as to whether it was Clark or Greenberg who tasered plaintiff and hit him with a baton.  (*Id.*)  However, the undisputed evidence shows it was Greenberg, not Joseph or Tai, who struck plaintiff's elbow.  (*Id.*)  Therefore, because plaintiff alleges no other improper physical contact, defendants assert Nichols's claims against defendants Joseph and Tai should be dismissed.

Plaintiffs counter, without citing to any evidence or law, that plaintiff Nichols has made out a viable claim for excessive force against defendant Tai and viable claims for intentional infliction of emotional distress, negligence, and violation of California Civil Code § 52.1 against both defendants Tai and Joseph.  (ECF 17 at 14.)  Plaintiffs assert the excessive force claim is valid because defendant Tai held Nichols down while Nichols was being tasered and placed his knee on Nichols's back and shoulder area as he handcuffed Nichols.  (*Id.*)  The other three claims against both defendants are viable, plaintiffs contend, because these defendants ridiculed Nichols for defecating on himself; furthermore, defendant Tai "hurled racial epithets at Plaintiff calling him a nigger and saying that he, as a nigger, got a white bitch pregnant, speaking of Plaintiff Foley."  (*Id.*)

Defendants correctly argue in their reply that the California Tort Claims Act bars Nichols from basing his claims upon ridicule and racial epithets.  (*See* ECF 20 at 2–4.)  As the court found above, allegations of verbal abuse are "completely different" from the allegations of physical improprieties contained in plaintiffs' CTCA claim.  *See Turner*, 232 Cal. App. 3d at 890.  The court declines to consider the verbal abuse allegations as a basis for Nichols's claims against defendants Tai and Joseph.

Plaintiffs do not point to evidence to support their new contention that defendant Tai held Nichols down while Nichols was tased and put his knee on Nichols's back.  Thus, the court finds plaintiff may not base his excessive force claim against Tai upon any such facts.  FED. R. CIV. P. 56(c)(1) (in carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

13

support the fact"); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts").

There remains, however, a material factual dispute as to whether Joseph, Tai or Greenberg struck plaintiff's right elbow.  Plaintiff Nichols states in his deposition that he does not know who hit him but that it had to be either Joseph or Tai, and could not have been Greenberg, because Joseph and Tai were the only two behind him.  (Nichols Dep. at 24–26.)  Yet defendant Greenberg admits in his deposition to striking plaintiff's elbow.  (Dep. of Officer Robert Greenberg at 108, Ex. F, Decl. of Kelly J. Trujillo, ECF 16-3.)  On this disputed record, the court denies summary judgment on plaintiff Nichols's claims against Joseph and Tai.

IV.  CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED in part and DENIED in part as follows:

1. Summary judgment is granted on plaintiff Foley's claims of negligence, intentional infliction of emotional distress, and violation of California Civil Code § 52.1 against defendants Greenberg and Joseph, but summary judgment on these claims is denied as to defendant Tai;
2. Summary judgment is granted on plaintiff Foley's excessive force claim against defendant Clark but denied as to plaintiff Foley's other claims against defendant Clark;
3. Summary judgment is denied on plaintiff Nichols's claims against defendants Joseph and Tai.

IT IS SO ORDERED.

DATED: January 13, 2014.

UNITED STATES DISTRICT JUDGE